UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 91 CR 463-1 |
| v. | ) | |
| | ) | Chief Judge Rubén Castillo |
| MARIO CLAIBORNE, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Mario Claiborne ("Defendant") moves for a modification of his sentence under 18 U.S.C. § 3582(c)(2). (R. 2094, Mot.) For the following reasons, the motion is denied.

In the late 1980s and early 1990s, Defendant "was the leader of a drug distribution business operating out of Chicago, Illinois and Gary, Indiana." *United States v. Claiborne*, 62 F.3d 897, 899 (7th Cir. 1995). In 1993, he was tried and convicted of 20 drug-related offenses, including conspiracy to possess with intent to distribute cocaine, engaging in a continuing criminal enterprise, possession with intent to distribute cocaine, and money laundering. (R. 2098-1, Presentence Report ("PSR") at 3, 7-8.) At sentencing, District Judge G. Thomas Eisele[1] of the U.S. District Court for the Eastern District of Arkansas, sitting by designation, held Defendant responsible for distribution of 45 kilograms of crack cocaine. *Claiborne*, 62 F.3d at 901. He was sentenced to five concurrent life terms in addition to statutory maximum terms for the other counts, which were to run concurrent with his life sentences. *Id.* at 899. He raised various arguments on appeal, including challenging Judge Eisele's drug calculations. *Id.* at 900-901. In 1995, the U.S. Court of Appeals for the Seventh Circuit affirmed his conviction and sentence in all respects. *Id.* 900-02. Some 20 years later, Defendant filed the present motion seeking a

---

[1] Defendant's case was reassigned to this Court in 2001.

reduction in his sentence based on changes made to the U.S. Sentencing Guidelines reducing the penalties for certain drug offenses in the years since his conviction.[2] *See* U.S.S.G. § 1B1.10(d); *id.*, Suppl. to App'x C, amends. 750, 782.

The Court has limited authority to modify a criminal sentence after it is imposed. *See* 18 U.S.C. § 3582(b), (c); *Dillon v. United States*, 560 U.S. 817, 824-25 (2010). However, a sentence may be modified where the defendant was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission," provided that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). A reduction is not authorized under 18 U.S.C. § 3582(c)(2), and is not consistent with the applicable policy statements, if the amendment would not have the effect of lowering the defendant's applicable guideline range. *See* U.S.S.G. § 1B1.10, Application Note 1(A). In determining whether a defendant's guideline range has been lowered, the Court applies any retroactive amendments while leaving all other guidelines calculations intact. *See* U.S.S.G. § 1B1.10(b); *United States v. White*, 621 F. App'x 356, 358 (7th Cir. 2015).

Upon review, the changes to the Sentencing Guidelines do not have the effect of lowering Defendant's guideline range. At sentencing, the PSR calculated Defendant's base offense level on the conspiracy and other drug-related counts (which were grouped for sentencing purposes) at 42, given the amount of drugs involved. (R. 2098-1, PSR at 8.) The court imposed a two-level enhancement for using a firearm in the commission of the offense, a four-level enhancement for his leadership role in the drug operation, and a two-level enhancement for obstruction of justice,

---

[2] After Defendant filed his *pro se* motion, an attorney from the Office of the Federal Defender filed an appearance on his behalf pursuant to General Order 14-0023. (R. 2097, Appearance.) Counsel has since filed a document stating that she reviewed Defendant's *pro se* motion and the government's response and "has nothing to file in addition or in reply at this time." (R. 2099, Reply at 1.)

2

resulting in an adjusted offense level of 50. (*Id.* at 10.) Combined with a criminal history category of I, this yielded a guideline range of life.[3] (*Id.* at 22.)

Under the revised drug quantity table, an offense involving 25.2 kilograms or more of crack cocaine (as Defendant's did) carries an offense level of 38. U.S.S.G. § 2D1.1(c)(1). An offense level of 38, combined with the eight enhancement points that were imposed at sentencing (and which remain in place pursuant to § 1B1.10(b)), results in an adjusted offense level of 46. That offense level coupled with a criminal history category of I yields a guideline range of life— the sentence Defendant is already serving. *See* U.S.S.G. Ch. 5, Pt. A (Sentencing Table), Application Note 2; *see also United States v. Suggs*, No. 2:01 CR 98, 2011 WL 13117415, at *1 (N.D. Ind. Jan. 24, 2011) (denying motion for modification of sentence based on retroactive amendments pertaining to crack cocaine offenses, where defendant's "offense level, 46 . . . corresponds to a guideline range of incarceration for life. Assuming that his base offense level is reduced by 2 as a result of the amendments makes no ultimate difference: his revised adjusted offense level would be 44, and his guideline range remains life."). Because Defendant's guideline range has not been lowered by the amendments to the Sentencing Guidelines, the Court has no authority to reduce his sentence as he requests.

---

[3] The Court notes that the age of this case, and the lack of access to some of the original sentencing documents, has posed some challenges. The PSR and offense level worksheet submitted by the government reflect that Defendant's base offense level was calculated at 42. (R. 2098-1, PSR at 8; *id.*, Worksheet at 69.) In its brief the government suggests that Defendant's base offense level was calculated at 38. (R. 2098, Resp. at 8.) But the difference has no effect on the outcome of Defendant's motion. The lower number, combined with the sentencing enhancements, yields an adjusted offense level of 46. The higher number plus the enhancements yields an adjusted offense level of 50. Both of these offense levels are treated as a level 43, which is the highest listed offense level in the Sentencing Table. *See* U.S.S.G. Ch. 5, Pt. A, Application Note 2. There is also some discrepancy in the record as to the amount of drugs that were attributed to Defendant; the PSR calculated it at more than 108 kilograms of cocaine base and 391 kilograms of powder cocaine. (R. 2098-1, PSR at 8.) At one point the Seventh Circuit's opinion suggests that Judge Eisele agreed with these amounts, but elsewhere it suggests that the judge attributed 45 kilograms of crack cocaine to Defendant. *Claiborne*, 62 F.3d at 900-01. This apparent discrepancy also has no effect on the resolution of the motion. Even accepting the lower amount as the correct one, 45 kilograms of crack cocaine well exceeds the threshold for an offense level of 38 under even the more generous version of the Sentencing Guidelines now in effect. *See* U.S.S.G. § 2D1.1(c)(1).

## CONCLUSION

For these reasons, Defendant's motion for modification of his sentence (R. 2094) is DENIED.

ENTERED: _____
Chief Judge Rubén Castillo
United States District Court

**Dated: March 21, 2017**